UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ESTATE OF RUDY ESCOBEDO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:05-CV-424-TS |
| | ) | |
| CITY OF FORT WAYNE, et al., | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is the Defendants' Motion to Strike the Affidavit of Larry Danaher [DE 73], filed on June 29, 2007. Danaher is the Plaintiff's expert witness on police use of force. The Plaintiff filed her Response [DE 82] on July 20, 2007, and the Defendants filed their Reply [DE 89] on August 6, 2007. The Court announced its decision during a telephone ruling conference on January 31, 2008.

This is a civil rights lawsuit against members of the Fort Wayne Police Department and the City of Fort Wayne stemming from the fatal police shooting of Rudy Escobedo on July 19, 2005. The Defendants filed a Motion for Summary Judgment [DE 37] on January 16, 2007. In support of the Response [DE 49], filed March 22, 2007, the Plaintiff designated materials containing Danaher's opinions: his affidavit [DE 55-2, -3, -4] and declaration [DE 56–11]. The Defendants' motion to strike seeks the exclusion of all opinions of Danaher contained in his deposition [DE 73–4], affidavit, and declaration.

**STANDARD OF REVIEW**

For expert testimony to be admissible, it must be relevant and reliable, as required by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, stated that Rule 702 required the district court to perform a "gate-keeping function" before admitting expert scientific testimony, to ensure that it is not only relevant, but reliable. 509 U.S. 579, 589 (1993). The purpose of the rule in *Daubert* "was to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

*Daubert* listed four factors to be considered when determining whether scientific evidence is reliable: 1) whether the theory or technique can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) whether there are standards controlling the technique's operation and its known or potential rate of error; and 4) whether the theory or technique has gained widespread acceptance in the relevant scientific community. 509 U.S. at 593–94. Also, the 2000 Advisory Committee's Notes to Rule 702 suggest other factors to determine expert reliability, including:

> (5) whether "maintenance standards and controls" exist; (6) whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or developed "expressly for purposes of testifying"; (7) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (8) "[w]hether the expert has adequately accounted for obvious alternative explanations"; (9) "[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and (10) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give."

*Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534–35 (7th Cir. 2005) (quoting Fed. R. Evid. 702 advisory committee's notes (2000 amendments)). The list is not exclusive, and the Supreme Court emphasized the inquiry is a flexible one: "Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95.

A witness's own training and experience may be the foundation for an expert opinion, but "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 (advisory committee's notes (2000 amendments)). Experts can be qualified to testify based upon personal experience and knowledge, so long as the experience and knowledge is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). A witness need not put forth testimony in a scientific or technical matter to be considered an expert. *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). But offering only a bottom line conclusion does not assist the trier of fact and should not be admitted. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005).

*Daubert's* general principles apply to the expert matters described in Rule 702, not only to those matters that contain scientific testimony. *Kumho Tire*, 526 U.S. at 149. Courts must determine if the expert is qualified in the relevant field and if the methodology underlying the expert's conclusion is reliable. *Ammons v. Aramarck Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence. *Bradley v. Brown*, 852 F. Supp. 690, 697 (N.D. Ind. 1994).

**APPLICATION OF STANDARD TO DANAHER'S OPINION**

The Defendants' motion has three main arguments for why Danaher's opinions are inadmissable. First, they argue that Danaher's opinions and conclusions are unreliable because they are not based on any presented methodology or standard. Second, Defendants argue that Danaher made inadmissable legal opinions. Third, they claim that Danaher's statements and opinions about Escobedo's mental and physical state during the standoff are speculative.

**A.     Danaher Relies on Standards that Satisfy *Daubert***

As a preliminary matter, the Court finds that Danaher himself qualifies as an expert, a contention the Defendant has not contested. The main issue is whether Danaher has a basis, standard, or underlying methodology for the opinions he makes in this case. The Court finds that he does.

Danaher's opinions are based on the handbook he produced, "Legal and Liability Management for Tactical, SWAT, and Emergency Response Operations" [Danaher Handbook; DE 58-4]. The 16-page excerpt provided in the record is taken from different parts of his handbook and examines issues such as: allegations of a failure to train officers about the proper use of force; use of force for disturbed individuals; using "beanbag" (projectiles that are softer than bullets and considered by law enforcement to be less lethal) rounds; the parameters of the duty of officers to intervene when other officers are using excessive force; and the use of deadly force.

This handbook, in turn, is based in part on and cites to a 1997 International Association of Chiefs of Police (IACP) policy entitled "Dealing with the Mentally Ill." (*See id.* at 6.) The

handbook quotes seven "suggested tactics," such as: calming the situation by removing lights and sirens; not threatening the person with arrest; "request professional assistance if available and appropriate to assist in communicating with and calming the person"; and "[w]here violence or destructive acts have not occurred, avoid physical contact[] and take time to assess the situation." (*Id.* at 6–7.) Danaher also reviewed and based his opinions on the Fort Wayne Police Department's policy on shooting. (Danaher Declaration 5; DE 73-2.)

The Court notes that this contrasts with *Leaf v. Cottey*, 02-0433, a case in the Southern District of Indiana before Judge Larry J. McKinney. In that case, the judge issued an order [DE 74-3] striking Danaher's affidavit, which was used by the plaintiff in opposition to the summary judgment by the defendants, Marion County Sheriff Jack Cottey and others. The court in that case noted that Danaher only cited one published authority, a publication by the FBI on deadly force, and that made the basis for his opinions inadequate.

It is true that Danaher's materials—his affidavit, declaration, and comments during the deposition—do not cite to the standards in a "chapter and verse" style as might be preferred. However, the standards have been identified and produced for review by the Defendants. Danaher and the Plaintiff connect the standards with Danaher's opinions and assessments of the actions of the Defendants during the standoff. Accordingly, the Court finds that the standards referenced by Danaher in support of his opinions, combined with his experience and training, satisfy the *Daubert* reliability requirement. This does not prevent the Defendants from filing a motion in limine, in the event this case has a trial, regarding whether the jury should hear or consider specific statements.

**B.     Danaher Makes Legal Opinions, not Legal Conclusions**

The Defendants' second issue is a claim that Danaher makes inadmissable legal conclusions that should not be considered for purposes of summary judgment. Examples of statements that the Defendants' say are inadmissible legal conclusions are: "There were no 'exigent circumstances' here, given how law enforcement officers would understand that concept." (Defs' Mem. of Law in Support of Mot. to Strike Affid. of Larry Danaher 14; DE 74 (quoting Danaher Affidavit ¶35; DE 55–4)); and "[t]he amount of tear gas delivered into Esbocedo's apartment was clearly and obviously excessive." (*Id.* at 15 (quoting Danaher Affidavit ¶20; DE 55–3)).

The Court does not read Danaher's phrases such as "reasonable use of force" or "exigent circumstances" to be legal conclusions, let alone legal conclusions that are somehow binding on this Court if they are considered. The language of the courts has made its way into the vernacular. Police officers, law enforcement training materials, and expert witnesses all use such phrases in many contexts, including litigation, without the phrases becoming legal conclusions per se. In the event this case has a trial, there would still be an opportunity for the Defendants to file a motion in limine about these phrases to ensure the jury does not become confused about opinions and conclusions.

Additionally, the Court is not convinced that such opinions are inadmissable here. Federal Rule of Evidence 704 states that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). The primary "ultimate issue" to be decided in this case is whether the police use of force throughout the incident was reasonable. Danaher's opinions

6

about the conduct of the Defendants pertains to, or "embraces," that ultimate issue. *See Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) ("An expert is entitled to offer a view on the ultimate issue.") (citing Fed. R. Evid. 704(a)); *Miksis v. Howard*, 106 F.3d 754, 762 (7th Cir. 1997) (stating that "experts are allowed to testify as to the ultimate issue in a case" under Rule 704(a) in a rejection of the argument that an +expert improperly gave a legal conclusion about a "primary cause" of an accident in his testimony); *American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("[U]nder Fed. R. Evid. 704(a), an expert may testify about the ultimate issue to be decided by the trier of fact.").

The Defendants rely on *Pena v. Leombruni*, 200 F.3d 1031 (7th Cir. 1999)[1], where the court affirmed the district court's exclusion of the plaintiff's expert witness in a deadly force lawsuit against police. The Defendants quote this phrase from the case: "[T]he question whether the danger was sufficiently lethal and imminent to justify the use of deadly force was within lay competence." *Id.* at 1034. This case and this phrase, however, do not require the ruling that the Defendants seek. First, the court in that case believed "the jury needed no help," *id.*, in evaluating the justification for the use of force given the facts, namely, that the decedent, who was reported to have fought with store employees and acted "crazy," was advancing toward an officer with a chunk of concrete in his hand after being pepper sprayed. *Id.* at 1033. The facts of that case are so different than the facts here that the Court cannot say a jury would need no help in evaluating the police use of force throughout the standoff. Second, the Seventh Circuit only indicated that its ruling was based on Federal Rule of Evidence 702, which calls for expert

---

[1] The Defendants also discuss cases from other circuits, but those are not binding on this Court, and there is no shortage of authority on this issue in the Seventh Circuit that necessitates the need to review persuasive authority elsewhere.

testimony to "assist" the trier of fact, and not on Rule 704. That too differentiates *Pena* from this case.

Last, by the standard the Defendants use against Danaher's comments, some of the statements of the Defendants' expert, Ron McCarthy, also would be considered inadmissable legal conclusions. One example is: "In my opinion, the use of deadly force by Officer Martin was *correct and proper under these circumstances*. . . . The use of deadly force was *absolutely reasonable*." (Ron McCarthy Report 11; DE 37-32) (emphases added). Another example is: "The decision to enter the suspect's apartment #708 was a *reasonable* next step in an effort to try and apply the next less-lethal alternative." (*Id.* at 9) (emphasis added). The Court no more reads these to be legal conclusions than it does the similar statements made by Danaher.

**C.     Danaher's Opinions about Escobedo are not Speculative or Unfounded**

The last of the Defendants' objections is that Danaher makes unsupported and speculative comments about the mental and physical status of Escobedo. Defendants object to Danaher's statements that: a flash-bang grenade exploding near Escobedo's head would have blinded and deafened him, preventing him from hearing (and, consequently, obeying) the commands of officers; the masks worn by officers made it difficult for Escobedo to hear or understand their commands; Escobedo was not homicidal; and Escobedo was suffering from a mental disturbance.

Danaher's comments about the effect of the grenade appear to be based on his assessment of the photos and diagrams of the scene, including burn marks, and not just his experience. His statement about gas masks making it difficult to understand commands is based on his own

8

experience with the masks and with SWAT units. It is not speculative to say that the masks would make it difficult for Escobedo to hear commands, especially when the effect of the flash-bang grenades are considered.

Asserting that Escobedo was not homicidal also has a basis, and the Court reads the statement as a factual determination, not a legal conclusion. Danaher reviewed the transcript of the 911 call Escobedo made, and his comments indicate he was suicidal, was seeking help, and was fearful of police, but not that he wanted to kill other persons. The other police reports and records about the incident, which Danaher reviewed, also provide a basis for his statement that Escobedo was not homicidal. The same materials—particularly the 911 transcript and Escobedo's remarks to police about his use of cocaine and belief that officers were in his apartment at the beginning of the standoff—provide the basis for Danaher's statement that Escobedo was suffering from a mental disturbance.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Strike the Affidavit of Larry Danaher [DE 73] is DENIED.

So ORDERED on March 7, 2008.

      s/ Theresa L. Springmann
      THERESA L. SPRINGMANN
      UNITED STATES DISTRICT COURT