# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ESTATE OF RUDY ESCOBEDO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:05-CV-424-TS |
| | ) |
| CITY OF FORT WAYNE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

Before the Court is a Motion to Reconsider and For Clarification [DE 119], filed June 26, 2008, by the Plaintiff. The Plaintiff asks the Court to reconsider its summary judgment ruling on two issues—the excessive force claims against two Defendants for the fatal shooting of Rudy Escobedo, and the substantive due process claim against the supervisors—and reinstate those claims, which the Court had dismissed after granting in part and denying part the Defendants' motion for summary judgment. The Plaintiff also filed a Motion for Hearing and Oral Argument on Plaintiff's Motion for Reconsideration [DE 121].

## BACKGROUND

The Court's order [DE 111] of May 5, 2008, which granted in part and denied in part the Defendants' summary judgment motion, contains the full factual and procedural background of this case. Following that order, the Defendants' appealed [DE 114] the denial of summary judgment on qualified immunity grounds. On June 26, the Plaintiff filed the present Motion as well as a Motion for Hearing and Oral Argument [DE 121]. On July 28, the Defendants filed a Memorandum in Opposition [DE 126]. On August 4, the Plaintiffs filed a Reply [DE 127].

**DISCUSSION**

The Court first notes that the briefing on this Motion is sufficient, so there is no need to hold a hearing with oral argument.

The Plaintiff in her motion did not specify whether the motion was made pursuant to Federal Rule of Civil Procedure 59(e) or 60(b). The first approach allows a court to "alter or amend a judgment," but the motion "must be filed no more later than 10 days after the entry of judgment." Fed. R. Civ. P. 59(e). Because the Plaintiff filed the motion for reconsideration more than ten days[1] after the Court issued its summary judgment ruling, the Court must consider it as a motion filed pursuant to Rule 60(b).

With a motion under Rule 60(b), a "court may relieve a party or its legal representatives from a final judgment [or] order" for any of five sets of reasons, the relevant ones being "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). A motion under Rule 60(b) "must be made within a reasonable time—and of reasons (1), (2), and (3) no more than a year after the entry of the judgment or order of the date of the proceeding." Fed. R. Civ. P. 60(c). The Plaintiff's motion in this case appears to fall under the first or second set of reasons, so it is timely, and the Defendants do not contest the timeliness of this motion.

**A.      Jurisdiction**

"Before entertaining any claim, a federal district court must assure itself that it has

---

[1] The summary judgment order was dated May 5 and the Plaintiff's motion was dated June 26.

2

jurisdiction to hear the matter presented to it." *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 878 (7th Cir. 2002). The Court had subject-matter jurisdiction over the case in general because it involved a federal question, 28 U.S.C. § 1331. That is, the main claims were made under 42 U.S.C. § 1983 for violations of the constitutional rights of Escobedo.

But now a number of claims of excessive force are on appeal on the grounds of qualified immunity. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "Only one court at a time has jurisdiction over a subject." *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008). That means that "a district court may not interfere with [the appeals] court's jurisdiction by amending a decision that is under appellate review." *Id.*

The district court may exercise some jurisdiction and control over certain aspects of a case that is before an appeals court because the *Griggs* rule "applies only to those aspects of the case involved in the appeal." *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995) (internal quotations omitted). Under *Griggs*, "the district court retains jurisdiction to act only if the order being appealed or the proceeding before the district court is a discrete matter ancillary to the issues under consideration in the other court." *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir 2000). For example, a "district court may patch up clerical errors affecting one aspect of a case while another aspect is on appeal." *McHugh*, 528 F.3d at 540. Also, a district court "may award attorneys' fees while the merits are on appeal and may consider whether to grant permanent injunctive relief while an appeal from a preliminary injuction is pending." *Kusay*, 62 F.3d at 194. "A district court may address ancillary questions such as costs, the registration of judgments, and

3

motions for certificates of probable cause." *Id.*

In *Boyko v. Anderson*, 185 F.3d 672 (7th Cir. 1999), the district court ruled that a habeas corpus petition was untimely, the prisoner appealed, and while the appeal was pending, the district court granted the prisoner's Rule 60(b) motion, ruling that the habeas corpus petition was timely. *Id.* at 673. The Seventh Circuit ruled that a district court "had no power" to grant the Rule 60(b) motion, and its ruling that "purported to grant" it "was void." *Id.* at 674.

In this case, the issues that are on appeal are whether certain Defendants are entitled to qualified immunity. Deciding qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must answer the threshold question whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. 533 U.S. at 201. Second, assuming that a plaintiff is able to establish a constitutional violation under a favorable view of the facts, "the next, sequential step is to ask whether the right was clearly established." *Id.* In other words, a court must consider whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Id.* The issues that the Plaintiff seeks reconsideration for are the excessive force claims against two Defendants, Officers Jason Brown and Brian Martin, for the fatal shooting of Rudy Escobedo, and the substantive due process claim against the supervisor Defendants, Martin Bender, Douglas Lucker, Kevin Hunter, and Kevin Zelt.

It appears that these issues are closely enough related to and involved with the issues on appeal that the Court does not have jurisdiction over them. First, a ruling by one court on whether or how Escobedo's rights were violated could affect consideration of similar issues by the other court, which is precisely what *Griggs* sought to prevent. Second, the analysis to decide

this motion, at least the fatal force claims, is whether the Defendants' conduct was objectively reasonable in light of the circumstances. The Seventh Circuit will have to use the same analysis (albeit for different claims) as part of its qualified immunity analysis. The simultaneous analysis of whether officers' conduct during different parts of a three-hour incident was objectively reasonable falls too close to, if not into, that proscribed activity of controlling aspects of the case involved in the appellate review, *Griggs*, 459 U.S. at 58, or interfering with the appellate court's jurisdiction by amending a decision that is on review. *McHugh*, 528 F.3d at 540.

Third, the matters before the appeals court and before this Court on this motion arise from the same transaction and occurrence, namely, the standoff between Fort Wayne police and Escobedo that ended in the fatal shooting of Escobedo on July 19, 2005. Fourth, the issues raised in this motion are not discrete matters, such as clerical errors, *McHugh*, 528 F.3d at 540, or attorneys' fees, *Kusay*, 62 F.3d at 194, that are ancillary to the issues under consideration by the Seventh Circuit, *May*, 226 F.3d at 879. Rather, the issues here are substantive legal issues that go to the heart of this case. It is true that the claims on appeal are different claims (by paragraph number in the Complaint) than the claims still remaining with this Court. But that approach does not account for the reality that there are too many common legal considerations between the claims on appeal and the claims remaining here, and the fact that they all arise from the same factual incident.

For these reasons, this Court does not have jurisdiction to grant the Plaintiff's Motion.

**B.     Proper Rule for Motions to Reconsider**

Even if the Court does have jurisdiction, there appears to be another bar to considering

the merits of the Plaintiff's Motion. The Seventh Circuit has indicated that motions for reconsideration are to be brought under Rule 59(e) and should not be made under Rule 60(b). *In re Ring*, 266 F. App'x 492, 493, 2008 WL 508160 (7th Cir. 2008) ("A litigant cannot present arguments in a motion under Rule 60(b) that could have been made to the district court in a timely motion for reconsideration."); *Perez v. United Student Aid Funds, Inc.*, 248 F. App'x 756, 757, 2007 WL 2818451 (7th Cir. 2007) ("Motions under [Rule 60(b)] cannot include arguments that could have been made on direct appeal or in a timely motion for reconsideration under Federal Rule of Civil Procedure 59(e)."); *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997) (stating that such a motion is "not a substitute for a timely motion in the district court to reconsider"). As discussed earlier, the Motion to Reconsider was filed too late to be considered a motion under Rule 59(e).

Despite this problem, the Court will nonetheless consider the Motion's merits, as it provides an alternative basis for denying the motion. Even if the Court is mistaken as to the lack of jurisdiction, it would deny the Motion.

**C.     Alternative Basis for Denying Motion: The Motion Fails on the Legal Merits**

There are consequences for filing a Rule 60(b) motion rather than a Rule 59(e) motion because they have different standards. "[T]he grounds for relief under Rule 60(b) are more limited than those for relief under Rule 59(e)." *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003). The standard for Rule 60(b) is "exacting," while it is "more liberal" for Rule 59(e). *Ball v. City of Chi.*, 2 F.3d 752, 761 (7th Cir. 1993) (noting that Rule 59(e) has a "lower threshold of proof" than Rule 60(b)).

"Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (quoting *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997)). This motion for reconsideration under Rule 60(b) must cite "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Generally, these motions "serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). However, legal error is not an acceptable basis for such a motion. *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002).

> In fact, it is a forbidden ground because if permitted it would enable a losing party to appeal outside the time limits for appeals without excuse, since the existence of the error would be apparent from the district court's judgment and thus could have been corrected on appeal within the time allowed for taking appeal.

*Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017–18 (7th Cir. 2002) (citation omitted). "Manifest error" is defined as "wholesale disregard, misapplication, or failure to recognized controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

There is another important consideration for motions to reconsider. It is a well-established rule in this circuit that a party cannot present new evidence in its motion to reconsider when it could have presented that evidence during summary judgment. *Karraker*, 411 F.3d at 837 (stating that a Rule 60(b) motion "is not an appropriate place to slip in arguments that should have been made earlier"); *Heft v. Moore*, 351 F.3d 278, 282 n.1 (7th Cir. 2003)

(declining to consider a plaintiff's untimely affidavit); *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990) (quoting and citing several circuit cases with the same holding) (stating that an expert witness's supplemental affidavit should have been introduced during summary judgment and not in a motion to reconsider).

> Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The nonmovant has an affirmative duty to come forward to meet a properly supported motion for summary judgment . . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Rothwell Cotton Co.*, 827 F.2d at 251 (quoting *Keene Corp.*, 561 F. Supp. 665–66).

> A party seeking to defeat a motion for summary judgment is required to wheel out all its artillery to defeat it. Belated factual or legal attacks are viewed with great suspicion, and intentionally withholding essential facts for later use on reconsideration is flatly prohibited. Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.

*Caisse Nationale de Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations and internal quotations omitted).

**1.**  ***The Excessive Force Claims Against Defendants Brown and Martin for the Fatal Shooting of Escobedo***

The Plaintiff advances several arguments for why the Court should reinstate the excessive force claims against Defendants Brown and Martin for the fatal shooting of Escobedo. First, the Plaintiff says they lack credibility so the Court should not accept their account of the shooting, namely that Escobedo pointed his gun at them, putting them in fear for their life and danger, and forcing them to use lethal force against him. Second, the Plaintiff argues that the physical evidence for whether Escbobedo pointed his gun at the officers is inconclusive. Third,

the Plaintiff argues that the Court should consider the additional evidence the Plaintiff provides in support of this motion. In sum, the Plaintiff argues that all of these reasons show that a jury must hear these claims against the two officers.

An initial problem with the Plaintiff's argument is that it is based on the presumption that "[t]he Court was required to make a credibility determination in order to find that the shooters' conduct was reasonable." (Pl. Mem. in Supp. of Mot. to Reconsider and for Clarification 4.) That is incorrect. The Court was not required to make a credibility determination in order to find that the shooters' conduct was not unreasonable, and it did not do so. It is well known that a court may not make credibility determinations when deciding a summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")

In this case, the Court simply considered the only evidence provided about the shooting: the statements of Officers Martin and Brown. The Plaintiff failed to challenge, contradict, or controvert those statements (even the Plaintiff's expert did not challenge or controvert the account of the shooting itself), so the Court was bound to accept them as true. Given those unchallenged facts, there was no choice but to base the reasonableness decision on those facts. "To overcome a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party

9

here, the Plaintiff, failed to do any of those things in regard to the shooting incident. The Plaintiff's approach is similar to the plaintiff's argument in *Springer v. Durflinger*, 518 F.3d 479 (7th Cir. 2008), a 42 U.S.C. § 1983 case against a school district for a First Amendment retaliation claim.

> The parents' argument in opposition to summary judgment boils down to an allegation that defense witnesses are lying and the stated reasons for the school's actions are phony. They argue that there are "two sides to every story, which makes this a perfect credibility case for a jury to decide." The parents correctly note that evaluations of witness credibility are inappropriate at the summary judgment stage. However, when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.

*Id.* at 484 (citation omitted).

Second, the Plaintiff is now asking the Court to evaluate the credibility of Officers Martin and Brown. A court may not make credibility determinations when considering a motion to reconsider a summary judgment ruling any more than it may do so when considering the original summary judgment motion.

Third, the Plaintiff is using new evidence—such as Defendant Martin's statement to internal police investigators, a newspaper article containing a quote by Defendant Kevin Hunter, and records of Escobedo's cellular phone showing it was used after the shooting—to challenge the officers' account of the shooting and the incident in general. The Plaintiff acknowledged that "it will be necessary for the Court to consider additional evidence, which was available at the time the Defendant first moved for summary judgment, but was withheld by Plaintiff because it was intended for impeachment." (Pl. Mem. in Supp. of Mot. To Reconsider and for Clarification 10.) As the Defendants correctly point out, the Plaintiff cannot use and the Court cannot consider this evidence, *Caisse Nationale*, 90 F.3d at 1270 ("[I]ntentionally withholding essential facts for

later use on reconsideration is flatly prohibited."), because the Plaintiff was able to use it during summary judgment (but chose not to) and it is not "newly discovered evidence." *Rothwell Cotton Co.*, 827 F.2d at 251. *See also Heft*, 351 F.3d at 282 n.1; *DeBruyne*, 920 F.2d at 471. "As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer*, 518 F.3d at 484 (internal citations omitted). The Defendants also correctly note that the newspaper article with Defendant Hunter's statement faces a hearsay admissibility problem.

Fourth, even if the Court does consider the Plaintiff's new evidence, the attacks on the officers' credibility fails to raise a genuine issue of material fact about the reasonableness of the shooting. A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). The slightly different accounts of the position of Escobedo's arm (Brown indicated it was straight out, Martin indicated it was bent with the hand closer to Escobedo's chest) do not change the still-uncontested fact that both officers stated that Escobedo pointed a gun at them, thus justifying their use of lethal force. The slight difference in their testimony does not raise an inference that one or both officers are lying.

The Plaintiff also accuses Defendant Hunter of lying to the media and in his deposition by making statements such as, "We did give him options, but he did not take them. If he doesn't have a desire to live, we cannot do much about it," (Journal Gazette article, Aug. 7, 2005; DE 120-3 at 7), and "He had every opportunity to surrender, but he didn't do it." (Hunter 2nd Dep. 22:2–3; DE 51-2 at 23.) The Plaintiff believes the police were lying because they "had to know that Escobedo was trying to call Taylor because the phone was used after Escobedo's death and

11

after it was in possession of the crime scene technicians and stored in the evidence room." (Pl. Mem. in Supp. of Mot. To Reconsider and for Clarification 7–8.) The cellular phone records showing that Escobedo was trying to reach police during the breach of the apartment, and the cell phone records indicating that police checked the phone's call history, do not support the Plaintiff's allegation. There is no information to suggest that Defendant Hunter personally was aware of the cell phone records and what they showed when he made his statements. Even if he was aware of them, his statements can be viewed as merely his expression of opinion about the incident as a whole. In any event, the fact that Escobedo was trying to contact police by phone during the breach of the apartment was a factor in the Court's summary judgment opinion.

      The Plaintiff cites autopsy photos (attached as exhibits to her memorandum in support of the motion for reconsideration) combined with the testimony of the pathologist, P.K. Carpenter, who conducted the autopsy, in support of an argument that the officers' accounts are not consistent with the physical evidence. However, a review of the autopsy photos does not "demonstrate that Escobedo could not have been holding the gun in his hand at the time the bullet passed through his hand," (Pl. Mem. in Supp. of Mot. to Reconsider and for Clarification 10), as the Plaintiff argues. The Plaintiff's theory of what these photographs show is, indeed, "speculation." (Defs. Mem. in Opp. to Mot. for Reconsideration 10.) Also, the Plaintiff acknowledges that autopsy findings were inconclusive on the question of whether Escobedo was pointing the gun at the officers when they fired. (Pl. Mem. in Supp. of Mot. to Reconsider and for Clarification 9.) In other words, Escobedo could have been pointing his gun at the officers when they fired, or he merely could have had his empty hands up. (Carpenter Dep. 121:9–23.) Carpenter's findings do not controvert and are not inconsistent with the officers' accounts of the

shooting.

The Plaintiff uses some other facts and evidence (that actually were raised on summary judgment) to raise doubts about the veracity of the Defendants and their statements. The lack of the usual post-incident debriefing and the "walkthrough" with the Defendants' expert witness may be unusual, but they do not raise any genuine issues of material fact about what happened earlier during the shooting and the incident as a whole, nor do they constitute "specific facts demonstrating that there is a genuine issue for trial." *Chelios*, 520 F.3d at 685. The Plaintiff also attacks Defendant Brown's testimony about how he aimed the less-than-lethal Sage weapon (which fires bean-bag rounds) and his account for why he hit Escobedo's leg rather than torso (where Defendant Brown was aiming). The Plaintiff argues that if Defendant Brown's aim was set at twenty-meters, as Brown said it was, then "Brown would have struck higher than where he aimed, not lower," (Def. Mem. in Supp. of Mot. to Reconsider and for Clarification 6), due to the fact that Brown "was only ten to twelve feet from Escobedo when he fired." (*Id.*) The Plaintiff's argument is unpersuasive. Defendant Brown's account of a life-threatening, traumatic experience that required split-second decision making is not unreasonable or implausible, so it does not raise "further questions about Brown's credibility and the reliability of his testimony." (Pl. Mem. in Supp. of Mot. To Reconsider and for Clarification 6–7.) Also, the issue of where or how the Sage weapon was aimed does not raise a material fact about the force used against Escobedo and its justification.

The point of all this new evidence and renewed argument based on evidence used in summary judgment is to highlight minor differences and discrepancies in the Defendants' accounts. There is no material evidence to controvert the moving party, the Defendants. There is

only an attack on their credibility. But this is not enough to survive summary judgment or win a motion to reconsider the Court's ruling on summary judgment. Even if "the conflicts in the stories would be fodder for impeachment if this case went to trial[,] . . . the prospect of challenging a witness' credibility is not alone enough to avoid summary judgment." *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998). The plaintiffs in *Springer v. Durflinger*, 518 F.3d 479 (7th Cir. 2008) made an argument that is similar to the Plaintiff's argument here, namely, that a jury should get the chance to judge the credibility of defendants or their witnesses, and that the jury will not believe them and their account for why the plaintiff was fired.

> The parents' argument in opposition to summary judgment boils down to an allegation that defense witnesses are lying and the stated reasons for the school's actions are phony. They argue that there are "two sides to every story, which makes this a perfect credibility case for a jury to decide." The parents correctly note that evaluations of witness credibility are inappropriate at the summary judgment stage. However, when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.

*Id.* at 484 (citation omitted).

In conclusion, the Court's decision about the claims against Defendants Martin and Brown for the fatal shooting of Escobedo stands.

**2.** *Substantive Due Process Claims Against Supervisor Defendants Under the State-Created Danger Exception*

The Plaintiff argues that the Court should not have granted summary judgment to the Defendants on the Plaintiff's substantive due process claim. Specifically, the Plaintiff argues that this claim falls under the state-created danger exception, a theory stemming from *DeShaney v.*

*Winnebag County Department of Social Services*, 489 U.S. 189, 201 (1989), and that "the Court's position misconstrues the propriety of the substantive due process claim as a matter of law." (Pl. Mem. in Supp. of Mot. To Reconsider and for Clarification 2.) This doctrine states "that liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) (internal quotations omitted).

The Seventh Circuit in *King ex rel. King v. East St. Louis School District*, 189, 496 F.3d 812, 817 (7th Cir. 2007), stated that "the following three principles . . . . must govern our analysis" of the state-created danger doctrine:

> First, in order for the Due Process Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience.

*Id.* at 817–18 (citations omitted). The Seventh Circuit has also said that cases addressing this issue "suggest that the key question in determining whether state behavior violated the victim's constitutional rights is: 'What actions did [the state actor] affirmatively take, and what dangers would [the victim] otherwise have faced'" *Windle v. City of Marion, Ind.*, 321 F.3d 658, 661 (7th Cir. 2003) (quoting *Monfils*, 165 F.3d at 517). Furthermore, "cases in which we have either found or suggested that liability attaches under the 'state-created danger' exception are rare and often egregious." *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003).

Most cases involving this doctrine relate to claims against schools or social service agencies for failing to protect children, but the Seventh Circuit has decided some police conduct

15

cases involving this theory. There appear to be only a few cases where the Seventh Circuit held that police were or could be held liable under the doctrine. In *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993), the court ruled that officers could be held liable under the state-created danger doctrine after they arrested a sober driver and left behind a drunk driver who later crashed into and killed another driver, the plaintiff. In *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1988), the court ruled that a deputy police chief could be held liable under the doctrine because he said he would make sure a tape of an informant would not be released but then he failed to prevent it from being released, thus endangering the informant, who was murdered.

      Turning to this case and the first inquiry, it cannot be said that the Defendants created the danger here. Escobedo initiated the encounter with police by calling 911 and asking for help after ingesting cocaine and alcohol. Some of the actions of the Defendants and the police in general might be seen as increasing the danger to Escobedo. For example, cutting off communication with Escobedo for the apartment breach and failing to ensure communication could be reestablished probably increased the danger to Escobedo. On the other hand, it can be argued that Escobedo did a number of things throughout the incident, including right up until his last moments alive, that also increased the danger to himself. For example, he did not surrender or discard his firearm, and he (according to all available evidence) pointed a gun at a police officer instead of obeying the commands to put it down. Escobedo's actions make this case very different than *Reed* and *Monfils*. The dead driver in *Reed* had nothing to do with the officers or the drunk driver they left with a vehicle; she merely had the misfortune to be driving on the road when the drunk driver crossed the line and crashed into her. 986 F.2d at 1123. The murdered informant in *Monfils* had no role to play in the failure of the deputy chief to prevent the tape of

the informant's phone call from being released; in fact, the informant made repeated efforts to have the police retain the tape. 165 F.3d at 513–15.

Second, it is not at all clear that the officers were the proximate cause of Escobedo's death. In other words, the Court must examine the danger Escobedo would have otherwise faced. *See Windle*, 321 F.3d at 661. Escobedo was armed, despondent, under the influence of drugs, and suicidal. It is forseeable that he might have died from his own hand. More importantly, as explained immediately above, his actions prolonged the incident because he refused to surrender.

Third, the Plaintiff has not shown that the actions of the Defendants "shock the conscience." *King*, 496 F.3d at 818.

> The inquiry into whether official conduct shocks the conscience in a given case is a necessarily fact-bound inquiry. The Supreme Court has noted that this standard lacks precise measurement, but has stated that the emphasis on whether conduct shocks the conscience points toward the tort law's spectrum of liability. Only conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience. Thus, when the circumstances permit public officials the opportunity for reasoned deliberation in their decisions, we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual. On the other hand, where circumstances call for hurried judgments in order to protect the public safety or maintain the public order, and thereby render reasoned deliberation impractical, conduct must reach a higher standard of culpability approaching malicious or intentional infliction of injury before we shall deem official conduct conscience shocking.

*Id.* at 818–19 (citations and internal quotations omitted). Again, a comparison of the conduct of the Defendants in this case to the conduct of police in *Reed* and *Monfils* shows a large difference. Leaving a drunk driver on the road and failing to prevent the release of an informant's tape to the person who has promised harm to the informant constitute deliberate indifference. In this case, though, the police had concerns, however well- or ill-founded and well- or ill-justified, about public safety, traffic, and the readiness of the officers. The police conduct falls into a different category than deliberate indifference.

Overall, this case is too distinguishable from cases in this circuit where courts have held that officers are or may be liable under the state-created danger doctrine. Because Escobedo played such a significant role in creating and increasing the danger to himself, the Court cannot find that this doctrine applies. Therefore, the Court's ruling that dismissed the substantive due process claim remains in force.

### 3. *Clarification of Damages Issue*

The last issue raised in the Plaintiff's Motion is a request that the Court clarify its summary judgment ruling as to "whether the Plaintiff will be permitted to seek damages related to the death of Escobedo based on the remaining claims that the Court has directed to proceed to trial." (Pl. Mem. in Supp. of Mot. to Reconsider 20.) This question was apparently raised because the Court granted summary judgment to the Defendants on the wrongful death claim against the City of Fort Wayne and on the excessive force claims against Defendants Brown and Martin for the fatal shooting of Escobedo, leaving no claims that arise solely from Escobedo's death. The Plaintiff's position is "that such damages are a question of causation, and thus, a factual consideration that must be addressed by the jury." (*Id.*) The Defendants argue that "[t]he only damages potentially recoverable by the estate on the remaining claims would be for Escobedo's alleged pain and suffering, fright, and/or emotional distress experienced from the time tear gas was initially introduced into the apartment until the time of the shooting." (Defs. Mem. in Opp. to Mot. for Reconsideration 4.)

The issue of what damages are available is not yet ripe for decision, so the Court in its discretion declines to rule on the matter. A ruling on what damages are recoverable should be

made if and after a trial is held and if and when liability is established. Because that has not taken place, and may not even take place (the non-dismissed claims are on appeal), the request for clarification on damages does "not raise issues that are ripe for judicial determination." *Harris Trust and Sav. Bank v. E-II Holdings, Inc.*, 926 F.2d 636, 640 n.14 (7th Cir. 1991). The issue of what damages are available, like the issue in *Harris Trust*, is "premised on pure speculation as to what the future may hold." *Id.* Legal issues, like "[cases][,] are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). Also, this request essentially asks for a preview of what evidence might be admitted at trial, but that decision also is not ripe. The Court cannot issue rulings on admissibility before motions *in limine* are filed. Accordingly, the Court declines to address the issue of damages at this time.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Reconsideration [DE 119] and Motion for Hearing and Oral Argument [DE 121] are DENIED.

So ORDERED on August 29, 2008.

     s/ Theresa L. Springmann
     THERESA L. SPRINGMANN
     UNITED STATES DISTRICT COURT